ARSENIO VÁZQUEZ, en representación de JUANA DÍAZ MANGUAL, peticionaria, *v.* IDALIE CARABALLO, ALCAIDE CÁRCEL DE VEGA ALTA, demandada.

*Número:* JO-83-8 *Resuelto:* 9 de mayo de 1983

Harry N. Padilla Martínez y Jaime Márquez Torres, abogados de la peticionaria; Miguel Pagán, Procurador General Interino, y Lirio Bernal, Procuradora General Auxiliar, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

La peticionaria Juana Díaz Mangual fue condenada por apropiación ilegal agravada a raíz de su participación en un fraude perpetrado por ella y otros individuos contra la firma Primitivo Grau e Hijos. Su sentencia fue suspendida bajo ciertas condiciones. 34 L.P.R.A. sec. 1026 *et seq.* Entre éstas, se le impuso que restituyera a la firma perjudicada la cantidad de $36,000, a razón de $500 mensuales. Esta cantidad constituía el monto total de lo apropiado por la peticionaria. La peticionaria cumplió de manera irregular con esta obligación hasta el mes de abril de 1982, fecha para la cual fue cesanteada de la empresa en que trabajaba, por motivo de problemas económicos. Ante estas circunstancias, la peticionaria acudió al tribunal para que se rebajara la cantidad de sus pagos mensuales y para que se permitiera amortizar su balance atrasado de $1,500 mediante pagos mensuales adicionales. El tribunal concedió esta solicitud. La peticionaria efectuó dos pagos más y, después, debido a su precaria situación económica, dejó de cumplir por completo la condición señalada.

Mientras tanto, la firma perjudicada había presentado una acción civil en contra de la peticionaria y de las otras personas envueltas en el fraude, en la que solicitó la indemnización de la pérdida sufrida. En diciembre de 1982 obtuvo una sentencia favorable, donde se condenaba a los demandados a resarcir solidariamente a la demandante esta cantidad.

Posteriormente la perjudicada remitió una carta al tribunal de instancia señalándole el incumplimiento de la peticionaria y solicitándole que obligara a la señora Díaz Mangual a cumplir con lo ordenado. El tribunal señaló una vista. Durante ésta el oficial probatorio declaró que la peticionaria había dado cumplimiento a todas las condiciones con excepción de las relativas a la restitución a la firma perjudicada. La peticionaria testificó sobre su situación económica, señalándole al tribunal que estaba desempleada;

que el ingreso de su marido también había disminuido debido a ajustes económicos en la empresa para la cual trabajaba; que entre ambos tenían un sinnúmero de deudas que afrontar, que había ofrecido sus bienes a la perjudicada como medio de saldar su deuda sin que ésta hubiera aceptado dicha oferta; que en todo momento había estado dispuesta a pagar su deuda con la perjudicada y que si no lo había hecho era tan solo porque no contaba con los recursos para hacerlo. Después de escuchar este testimonio el tribunal de instancia revocó la libertad a prueba. La peticionaria acudió ante nosotros. Concedimos término a la demandada para que compareciese a mostrar causa por la cual no debía revocarse la resolución recurrida. Ésta compareció por escrito.

■ La Ley de Sentencias Suspendidas provee un mecanismo alterno para que un convicto pueda cumplir su sentencia sin tener que ser recluido en una prisión. La anima un propósito preeminentemente rehabilitador —*Alcalá* v. *Corte*, 66 D.P.R. 430, 433 (1946); *Pueblo* v. *Vélez*, 76 D.P.R. 142, 148 (1954)— dando énfasis a la aptitud del individuo de convertirse en un miembro útil de la sociedad.

■ La concesión de este beneficio es discrecional. *Pueblo* v. *Álvarez Maurás*, 100 D.P.R. 620, 624 (1972); *Pueblo* v. *Martínez Rivera*, 99 D.P.R. 568, 575 (1971); *Pueblo* v. *Pérez Bernard*, 99 D.P.R. 834, 839 (1971); *Pueblo* v. *Llanos Virella*, 97 D.P.R. 95, 98 (1969). Mas esta discreción no puede ser ejercitada de manera arbitraria por el juez sentenciador. *Pueblo* v. *Sánchez González*, 90 D.P.R. 197, 200 (1964); *Pueblo* v. *Rivera*, 79 D.P.R. 880, 882 (1957).

■ La ley faculta al tribunal sentenciador para que imponga condiciones al conceder la probatoria. (1) En específico, el Art. 2 de la ley provee, en su parte pertinente que:

---

(1) A esos efectos, se dispone en 34 L.P.R.A. sec. 1031:

"Durante el término de cualquier sentencia que haya sido suspendida, el acusado quedará sujeto a la autoridad del tribunal en que se impuso la sentencia, y el

... [L]a corte sentenciadora podrá, a su discreción, además de poner a prueba a la persona sentenciada, imponer una multa cuya cuantía quedará a discreción del tribunal; disponiéndose, además, que la persona puesta a prueba podrá ser requerida para que, mientras estuviere en libertad a prueba, resarza a la parte perjudicada de los daños que le hubiere ocasionado o para que asuma la obligación de corregir el mal causado por su acto delictivo.

Así pues, se faculta al tribunal para que, como condición para la probatoria, exija el resarcimiento por parte del probando de los daños ocasionados a la víctima del delito.

▬▬ Esta restitución prevista por la Ley de Sentencias Suspendidas no debe ser confundida con la incorporada al Código Penal por la Ley Núm. 111 de 4 de junio de 1980. Véase principalmente el Art. 49A del Código, 33 L.P.R.A. sec. 3212. (²) A tenor con este último, la restitución es tam-

---

juez de dicho tribunal tendrá facultades para prescribir las condiciones para la suspensión de la sentencia, y, cuando esté convencido de la mala conducta del acusado, ordenar su arresto por el tiempo que falta para terminar su sentencia."

(²) Dispone:

"Sec. 3212. *Pena de restitución*

"En adición a la pena que se le imponga al convicto por el delito cometido, el tribunal podrá imponer la pena de restitución.

"La pena de restitución consiste en la obligación impuesta al convicto por el tribunal de pagar a la parte perjudicada daños y pérdidas que le hubiere ocasionado a su persona o a su propiedad, como consecuencia de su acto delictivo. La pena de restitución no incluirá sufrimientos y angustias mentales.

"La pena de restitución podrá ser impuesta para ser satisfecha en dinero, mediante la prestación de servicios, o mediante la entrega de los bienes ilegalmente apropiados o su equivalente.

"En el caso de que la pena de restitución sea satisfecha en dinero, el importe de la pena de restitución será determinado por el tribunal dentro de los límites establecidos por este Capítulo para la pena de multa, teniendo en cuenta el total de daños que habrán de restituirse, la participación prorrateada del ofensor en cuestión si fueron varios los delincuentes que participaron en el acto delictivo, la capacidad del ofensor para pagar y toda otra circunstancia que permita una fijación adecuada a las circunstancias del caso y al penado mismo.

"En delito menos grave la pena de restitución no excederá de quinientos (500) dólares. En delito grave, la pena de restitución no excederá de cinco mil (5,000) dólares.

"La pena de restitución será satisfecha inmediatamente. No obstante, a soli-

bién una de las penas disponibles para castigar un delito, la cual puede ser impuesta por sí misma o en adición a alguna otra de las penas establecidas. En su modalidad punitiva, tiene como fin el procurar la indemnización como medida de trato justo a la víctima, más bien que lograr la rehabilitación del criminal. Véase la Exposición de Motivos de la Ley en *Leyes de Puerto Rico*, Ed. Equity, 1980, págs. 387–388. Véase además, S. Schafer, *Restitution to Victims of Crime*, London, Stevens & Sons, 1960, págs. 117–129. Por esta razón se encuentra sujeta a varias limitaciones, tanto en su cuantía como en la forma de su pago.

 Ahora bien, al adoptarse la Ley Núm. 111, la Asamblea Legislativa estaba consciente de que la restitución ya existía en nuestra jurisdicción como posible condición para conceder la libertad a prueba, bajo la Ley de Sentencias Suspendidas. El historial legislativo indica de forma inequívoca que la intención de la Asamblea Legislativa al adoptar la Ley Núm. 111 no fue de suplantar una modalidad de restitución por otra, sino de complementar el mecanismo existente con una en el cual la restitución no excluyera otras penas. Véase el *Informe de la Comisión de*

---

citud del penado, y a discreción del tribunal sentenciador, podrá pagarse totalmente o en cuotas dentro del término de 30 días a partir de la fecha en que ha quedado firme la sentencia.

"El tribunal, a solicitud del penado, después de dictada sentencia imponiendo el pago de restitución, discrecionalmente, podrá autorizar el pago o amortización de la restitución o de la parte insoluta de la misma mediante la prestación por el convicto de trabajo libre bajo la supervisión y jurisdicción del sistema correccional del Estado Libre Asociado de Puerto Rico. Se abonarán $10.00 por día de trabajo, cuya jornada no excederá de 8 horas diarias.

"La Administración de Corrección y la Administración de los Tribunales deberán aprobar la reglamentación pertinente para poner en ejecución las disposiciones de la presente sección, entre otras, en cuanto a normas, condiciones y lugares de trabajo y supervisión. Dicha reglamentación tomará en cuenta la rutina normal de trabajo del convicto.

"El tribunal conservará jurisdicción sobre el convicto a los fines del cumplimiento de la orden de amortización así dictada, incluyendo, en los casos apropiados, la facultad de dejar sin efecto dicha orden, exigir el pago total de la restitución, o en su caso, el balance insoluto de la misma."

*lo Jurídico del Senado* y el *Informe de la Comisión de lo Jurídico Penal de la Cámara de Representantes*, ambos sobre el P. del S. 1388. Por lo tanto, los requisitos de la restitución, según dispuestos en el Código Penal, son inaplicables a la restitución permitida por la Ley de Sentencias Suspendidas.

 Hemos señalado que aunque la concesión de la probatoria es discrecional, no puede ser arbitraria. Igualmente es necesario reconocer que las condiciones que debe cumplir el probando deben estar razonablemente dirigidas hacia su rehabilitación. Véanse: *United States* v. *Consuelo-González*, 521 F.2d 259, 263–264 (9th Cir. 1975); *Higdon* v. *United States*, 627 F.2d 893, 897 (9th Cir. 1980); 4 *Wharton's Criminal Procedure* Sec. 614, pág. 231 (1976); A. Campbell, *Law of Sentencing*, New York, Lawyers Co-operative Pub. Co., 1978, Sec. 20, pág. 83; *A.B.A. Standards Relating to Probation*, 2da ed., 1980, T. III, Sec. 18-2.3(e); E. DiCerbo *When Should Probation Be Revoked?*, 30 Fed. Prob. 11, 12 (junio 1966); J. Best y P. Birzon, *Conditions of Probation: An Analysis*, 51 Geo. L.J. 809, 810 (1963); Note, *Limitations upon Trial Court Discretion in Imposing Conditions of Probation*, 8 Ga. L. Rev. 466, 470 (1974); Note, *Judicial Review of Probation Conditions*, 67 Colum. L. Rev. 181, 198 (1967). En particular, se ha señalado que la validez de una condición que exija del probando que resarza a la víctima de los daños que le ha ocasionado tiene que forzosamente depender de su capacidad económica para llevar esto a cabo. Campbell, *op. cit.*, Sec. 23, pág. 89; *A.B.A. Standards for Criminal Justice*, 2da ed., Boston, Little, Brown and Co., 1980, T. III, Sec. 18-2.3(e)(i); DiCerbo, *op. cit.*, pág. 13; Best y Birzon, *op. cit.*, pág. 827; *Limitations upon Trial Court Discretion*, supra, pág. 486; Annot., *Ability to Pay as Necessary Consideration in Conditioning Probation or Suspended Sentence upon Reparation or Restitution*, 73 A.L.R.3d 1240 (1976) y casos allí citados. [3]

___

[3] *Cf. Fuller* v. *Oregon*, 417 U.S. 40 (1974), donde el Tribunal Supremo de Estados Unidos sostuvo la validez de un estatuto que imponía la obligación de

En el presente caso la condición impuesta no fue originalmente irrazonable, en vista de que la peticionaria pudo cumplirla mientras estuvo empleada, si bien lo hizo de forma irregular. Sin embargo, esto no dispone de la controversia. Es menester determinar si su incumplimiento posterior era motivo suficiente para revocar su libertad a prueba, si el mismo se debió exclusivamente a su falta de recursos.

La Ley de Sentencias Suspendidas dispone que la corte sentenciadora podrá revocar la libertad a prueba en cualquier momento en que a su juicio ésta sea incompatible con "la debida seguridad de la comunidad o con el propósito de rehabilitación del delincuente". Véase, 34 L.P.R.A. sec. 1029. Ahora bien, el Tribunal Supremo de Estados Unidos, en *Gagnon* v. *Scarpelli*, 411 U.S. 778 (1973) —y siguiendo su decisïón anterior en *Morrissey* v. *Brewer*, 408 U.S. 471 (1972), con respecto a la libertad bajo palabra— aclaró que la probatoria constituye en interés libertario limitado que ńo puëde ser suprimido sin conceder ciertas garantías de debido procedimiento. Y en los casos de *Williams* v. *Illinois*, 399 U.S. 235 (1970); *Morris* v. *Schoonfield*, 399 U.S. 508 (1970); y *Tate* v. *Short*, 401 U.S. 395 (1971), el Tribunal Supremo federal declaró que someter a un convicto indigente a una penalidad mayor que la que generalmente afrontaría una persona que tuviera medios económicos es incompatible con la garantía constitucional de la igual protección de las leyes.

Siguiendo esta interpretación, un gran número de jurisdicciones ha resuelto que la probatoria no debe revocarse por incumplir la condición de restitución u otras condiciones análogas, cuando el incumplimiento no ha sido voluntario, sino que se ha debido a las limitaciones econó-

---

pagar los gastos del abogado provisto por el Estado a aquellos probandos que fueran indigentes al momento del juicio, pero que posteriormente gozaran de una mejor situación económica.

micas del probando. Véanse: *United States* v. *Barrington*, 662 F.2d 1046, 1055 (4th Cir. 1981); *United States* v. *Boswell*, 605 F.2d 171, 174 (5th Cir. 1979); *United States* v. *Wilson*, 469 F.2d 368, 370 (2nd Cir. 1972); *United States* v. *Taylor*, 321 F.2d 339, 341–342 (4th Cir. 1963); *People* v. *Romero*, 559 P.2d 1101, 1102 (1976); *Cephas* v. *State*, 412 So. 2d 935 (1982); *State* v. *Huggett*, 525 P.2d 1119, 1124 (1974); *People* v. *Bullard*, 367 N.E.2d 1017, 1019 (1977); *People* v. *Ford*, 301 N.W.2d 831 (1981). Igual postura rige entre los tratadistas y comentaristas: C. Fricke, *Sentence and Probation*, California, Legal Book Store, 1960, pág. 90; *A.B.A. Standards for Criminal Justice*, supra, T. III, Sec. 18-7.4; DiCerbo, *op. cit.*, págs. 13–14.

▮ Por otro lado, si el probando no demuestra su falta de recursos o si por el contrario se prueba que tenía los medios para cumplir y que aun así no lo ha hecho, entonces ha de entenderse que la violación es intencional y procede la revocación de la probatoria. Véanse: *Boswell*, supra, pág. 175; *Hensley* v. *United States*, 257 F.2d 681, 684 (5th Cir. 1958); *Polk* v. *Com.*, 622 S.W.2d 223, 225 (1981); *Burke* v. *State*, 611 P.2d 203, 204 (1980); *Fong* v. *State*, 254 S.E.2d 460 (1979); *People* v. *Vaughn*, 394 N.E.2d 19, 20 (1979).

En el presente caso la peticionaria presentó prueba de que su incumplimiento se debía exclusivamente a su estrecha situación económica y de que había hecho un esfuerzo de buena fe para no incumplir. Su oficial probatorio también testificó que había dado cumplimiento al resto de las condiciones. En estas circunstancias quedaba excluido el que la violación de la condición fuera intencional. Por lo tanto, no procedía la revocación de la probatoria, sino, por el contrario, lo apropiado era una nueva revisión de la condición impuesta.

Por los fundamentos expresados, *se revocará la resolución recurrida y se devolverá el caso a la sala de instancia para que modifique, en el grado en que estime conveniente, las condiciones de la probatoria.*

El Juez Asociado Señor Díaz Cruz no intervino. El Juez Asociado Señor Rebollo López concurre en el resultado sin opinión.